## BRADFORD *v.* READ.

The court of chancery does not decide upon the regularity of the proceedings of the supreme court.

Where in a judgment creditor's suit, the defendant put in issue the return of the execution issued out of the supreme court against his property, and the complainant produced at the hearing an execution with a proper return indorsed, which had been filed *nunc pro tunc*, as of a day prior to the commencement of the suit, pursuant to a rule of that court made on a motion without notice after the issue was joined in the creditor's suit, on the ground that the original execution had been lost on its transmission from the sheriff to the clerk ; it was *held*, that the evidence sustained the issue on the part of the complainant.

The circumstance of its being relied on as a defence to the creditor's suit, would be no answer to such a motion in the supreme court, and ought not interfere with the force of the rule thereupon granted.

*October, 12; 15, 1844.*

THE bill was filed to reach the equitable interests and things in action of the defendant, against whose property, as the bill alleged, an execution at law had been returned unsatisfied. The charge in the bill was in the usual form ; and the answer denied that any such execution had been returned or filed.

The proof showed that the sheriff made a return on the writ in due form and mailed it to the clerk of the Supreme Court at Albany to be filed. It however could not be found on file, and on motion, that court ordered a new writ and return to be filed in its place, as of a day anterior to the commencement of this suit. Some other matters are mentioned in the decision of the court.

*B. G. Hitchings*, for the complainant.

*R. Ten Broeck*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The defendant took issue upon the allegations in the bill that an execution against his property was issued and returned unsatisfied.

The proof of the issuing of the *fieri facias*, its delivery to the

sheriff, his indorsing a return thereon, and duly mailing it to the clerk of the Supreme Court to be filed, is so clear that no question remains as to those facts.

In support of the charge in the bill that the writ was returned, the complainant produces an exemplification of such a writ with the direction and sheriff's return indorsed in proper form, and marked " filed June 10, 1843, *nunc pro tunc,* by order of court, Feb. 8th, 1844."

It further appears that on the day last mentioned, the Supreme Court made a rule directing such writ to be filed as of the tenth day of June, 1843, instead of the original *fieri facias,* proved to have been lost or mislaid.

The defendant insists that this rule and the proceeding under it are a nullity in reference to him, because the rule was obtained *ex parte,* and after he had put in his answer.

As to its being *ex parte,* this court cannot regard such an objection. The defendant was apprised by the notice of reading the evidence, served upon his solicitor, nearly six months before the hearing, that such proceedings had taken place, and if they were void or irregular, he should have moved the Supreme Court to set them aside.

This court does not decide upon the regularity of the proceedings of the Supreme Court. ( *Williams* v. *Hogeboom,* 8 Paige's R. 469; *Platt* v. *Cadwell,* 9 ibid. 386.)

Then as to the objection that the defendant had answered the bill. This too, I think, should have been presented to the Supreme Court. If the *ex parte* rule were improvidently granted, because it made no reservation of the defendant's intervening proceedings, he should have applied to the court to be heard in that behalf.

I am satisfied however, that the Supreme Court would not have annexed any condition to the granting of the rule, even if the defendant had been heard in opposition.

In *Seaman* v. *Drake,* 1 Caines' R. 9, that court ordered the judgment roll to be signed, *nunc pro tunc,* to sustain proceedings against the defendant's bail.

In *Close* v. *Gillespey,* 3 Johns. R. 526, the court amended the record, *nunc pro tunc,* so as to sustain an execution issued

on the judgment and levied, against a subsequent regular execution.

In *Chichester* v. *Cande*, 3 Cowen, 39, the record of judgment was mailed to the clerk's office, and the attorney relying upon its being filed in due course, issued an execution which was levied, and the defendant's property sold on that and subsequent executions. It turned out that the letter inclosing the judgment roll, miscarried, and no roll was filed *or judgment entered or docketed* till more than a year afterwards. On motion the court directed the record to be filed *nunc pro tunc,* so as to retain to the plaintiffs the priority of their execution. (And see *Hart* v. *Reynolds,* 3 Cowen, 42, note *a.*)

In the case before me, the defendant knew of the issuing of the execution, and he had refused to pay it to the sheriff when called upon, and alleged that he had no property liable to execution. He knew that it was the duty of the sheriff to have returned the writ, and if he had inquired of the sheriff, he would have learned that such duty had been performed. Under these circumstances the Supreme Court would have disregarded the vested right which his counsel claims that he has acquired by putting in his answer; and which is in truth only a right to defeat an undisputed debt, and subject the complainant to a bill of costs because of the loss of his execution, either in the mail or the Supreme Court clerk's office.

The case of *The Bank of Rochester* v. *Emerson,* before the Chancellor, October 17, 1843,(*a*) to which I was referred, is an authority in favor of the complainant. The Chancellor, notwithstanding the wilful irregularity of the solicitor, would have imposed no condition in granting the usual relief to the complainants in that case, but for its interfering to deprive third persons of that equality between creditors which equity cherishes.

I am therefore bound to give to the exemplification produced, its full force as evidence ; and it sustains the allegation of the return of the writ at the time stated in the bill.

I express no opinion upon the question discussed relative to

(*a*) Since reported in 10 Paige's R. 359.

the writ which was mailed, having actually reached the Supreme Court clerk's office at Albany.

The complainant is entitled to the usual decree for the payment of his debt and the costs of the suit.